Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| EL PUEBLO DE PUERTO RICO<br><br>Parte Recurrida<br><br>v.<br><br>EDNALIZ RIVERA ESPOLA<br><br>Parte Peticionaria | KLCE202500141 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Caso número:<br>B LE2024G0043<br><br>Sobre:<br>Art. 3.1 Ley 54 |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, a 19 de mayo de 2025.

Comparece ante *nos*, Ednaliz Rivera Espola (Rivera Espola o peticionaria), mediante un recurso de *certiorari* y nos solicita que revoquemos una *Resolución* emitida el 17 de diciembre de 2024 y notificada el 9 de enero de 2025, por el Tribunal de Primera Instancia, Sala Superior de Aibonito.

Mediante dicho dictamen, el foro primario revocó la *Resolución* del 13 de mayo de 2024, en la cual se paralizaron los procedimientos en contra de la peticionaria y se le concedieron los beneficios del régimen de libertad a prueba sujeto al cumplimiento de una serie de condiciones. En consecuencia, sentenció a la peticionaria a tres (3) años de reclusión.

Por los fundamentos que expondremos a continuación, *expedimos* el recurso de epígrafe y *revocamos* el dictamen.

**I.**

Por hechos ocurridos el 18 de enero de 2024, el Tribunal de Primera Instancia hizo una determinación de causa para arresto contra la peticionaria por una infracción al Art. 3.1 de la Ley Núm.

54 del 15 de agosto de 1989 según enmendada, conocida como *"Ley para la Prevención e Intervención con la Violencia Doméstica"*, una infracción al Art. 6.06 de la Ley Núm. 168 de 11 de diciembre de 2019, según enmendada, conocida como la *"Ley de Armas de Puerto Rico de 2020"* y una infracción al Art. 199 del *Código Penal de Puerto Rico del 2012*. En la etapa de vista preliminar, la peticionaria y el Ministerio Público llegaron a un acuerdo. En virtud de dicho acuerdo, el Tribunal de Primera Instancia hizo una determinación de causa probable para acusar por el Art. 3.1 de la Ley 54 y archivó los otros cargos al amparo de la Regla 246 de Procedimiento Criminal.

Luego de varios trámites, el 5 de marzo de 2024, la peticionaria hizo alegación de culpabilidad por el delito imputado y se refirió a informe presentencia para ser evaluada para el programa de reeducación y adiestramiento del desvío al amparo del Art. 3.6 de la Ley 54. Luego de que el informe resultara favorable para la peticionaria, ésta fue referida al programa de rehabilitación y reeducación. A esos efectos, el 13 de mayo de 2024, el Tribunal de Primera Instancia emitió una Resolución al amparo del Art. 3.6 de la Ley 54 paralizando todo procedimiento y concediendo los beneficios del régimen de libertad a prueba sujeto a una serie de condiciones a cumplir.

Posteriormente, el 10 de diciembre de 2024, la técnico socio penal rindió un informe alegando el incumplimiento de la peticionaria con dos de las condiciones impuestas por el Tribunal. En su informe, la técnico socio penal indicó lo siguiente:

> "Entendemos que la supervisada ha incumplido con las siguientes condiciones generales y especiales:
>
> a. "Comparecerá ante un Técnico de Servicios Socio Penales para la investigación evaluación y supervisión de su caso. Si por alguna razón ajena a su voluntad no pudiese comparecer en la fecha fijada, se comunicará de inmediato, exponiendo sus justificaciones…"

4. "No acercarse a la parte perjudicada, en el hogar, trabajo, hogar de familiares, abstenerse de intervenir a través de cualquier red social, enviar correos electrónicos, carta, llamadas y mensajes de texto o por terceras personas. No le ocasionará situaciones"."

El 12 de diciembre de 2024, se celebró la vista sumaria inicial de revocación de probatoria a solicitud del Ministerio Público. Según surge del expediente, no existe controversia en que las partes acordaron que en esa fecha se atendiera la vista final de revocación para que la peticionaria fuera excarcelada y se le modificaran sus condiciones para imponer supervisión electrónica y un método de supervisión al perjudicado por un término de tres (3) meses y así lo hicieron constar las partes para récord. No obstante, el Tribunal señaló la vista final de revocación para el 17 de diciembre de 2024.

Según surge de la transcripción de la vista del 17 de diciembre de 2024, antes de comenzar, el Ministerio Público expresó el acuerdo alcanzado entre las partes. Según lo expresado, el acuerdo consistía en modificar las condiciones de la *Resolución* para que se impusiera a la peticionaria una supervisión electrónica y "lock down". Ante la negativa del Tribunal de aceptar el acuerdo entre las partes, el Ministerio Público solicitó la reconsideración para que concediera lo acordado. Sin embargo, el Tribunal no reconsideró su postura y procedió a celebrar la vista final de revocación. En la vista testificó bajo juramento la Sra. Gladiliz Santiago Berrios, Técnico Socio Penal del Programa de la Comunidad de Aibonito. Como testigo de defensa, declaró el Sr. José Meléndez Cintrón.

Luego de celebrada la vista, el Tribunal de Primera Instancia concluyó lo siguiente:

"1. El testigo de defensa corroboró el testimonio de la trabajadora social.
2. La Sra. Ednaliz Rivera le mintió a la Social, al ocultarle que estaba junto con el perjudicado y decirle que no tenía comunicación con el perjudicado.
La mendacidad es incompatible con el proceso de rehabilitación.
3. El Ministerio Público probó que la probando violó la condición especial de la probatoria:

No acercarse a la parte perjudicada, en el hogar, trabajo, hogar de familiares, abstenerse de intervenir a través de cualquier red social, enviar correos electrónicos, carta, llamadas y mensajes de texto o por terceras personas. No le ocasionará situaciones.

El Ministerio Público probó que la probando hablaba por teléfono, por texto, estaba junto al perjudicado. La Social declaró que la probando le ocasiona golpes al perjudicado.

El mismo testigo de defensa declaró que a partir del 18 de junio de 2024, ambos se vieron, hablaron, se texteaban, hasta trabajaban juntos…"

En atención a lo anterior, el Tribunal de Primera Instancia revocó la *Resolución* emitida el 13 de mayo de 2024 y sentenció a la peticionaria a tres (3) años de cárcel.

En desacuerdo, la peticionaria presentó una *Moción Urgente de Reconsideración*, la cual fue declarada *No Ha Lugar* el 10 de enero de 2025, mediante *Resolución* notificada el 14 de enero de 2025. Inconforme con esa determinación, el 10 de febrero de 2025, la peticionaria compareció ante nos mediante recurso de *certiorari* y señaló la comisión de los siguientes errores:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL REVOCARLE LA PROBATORIA AL AMPARO DEL ARTÍCULO 3.6 DE LA LEY 54 A EDNALIZ RIVERA ESPOLA A PESAR DE QUE EL MINISTERIO FISCAL A TRAVÉS DE LA TÉCNICO SOCIO PENAL NO PROBÓ CON PREPONDERANCIA DE LA PRUEBA EL INCUMPLIMIENTO DE LA CONDICIÓN ESPECIAL (4) DE LA RESOLUCIÓN.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL REVOCARLE LA PROBATORIA AL AMPARO DEL ARTÍCULO 3.6 DE LA LEY 54 A EDNALIZ RIVERA ESPOLA EN VIOLACIÓN AL DEBIDO PROCESO DE LA LEY DE SENTENCIA SUSPENDIDA EN PUERTO RICO.**

Oportunamente, el 11 de marzo de 2025, el Pueblo de Puerto Rico, representado por la Oficina del Procurador de Puerto Rico, presentó un *Escrito en Cumplimiento de Orden,* exponiendo su posición al recurso. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**I.**

**A. *Certiorari***

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros,* 2023 TSPR 65. Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *800 Ponce de León Corp. v. AIG,* 205 DPR 163 (2020); *Pueblo v. Díaz de León,* 176 DPR 913 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra.* Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León Corp. v. AIG, supra.* No obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra.*

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari. Torres González v. Zaragoza Meléndez, supra.* En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari,* o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra*, pág. 918. Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559 (2009); *García v. Padró*, 165 DPR 324 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago, supra*, pág. 581; *S.L.G. Flores, Jiménez v. Colberg*, 173 DPR 843 (2008).

**B.    Discreción Judicial**

La discreción es una forma de razonabilidad aplicada al discernimiento judicial con el propósito de llegar a una conclusión justiciera. Está resuelto que la discreción judicial faculta al foro primario a escoger entre uno o varios cursos de acción dentro de un marco de razonabilidad y sin hacer abstracción del resto del Derecho. *García Rubiera v. Asociación*, 165 DPR 311 (2005) (citando a *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990); *Pueblo v. Sánchez*

*González*, 90 DPR 197 (1964)). Ahora bien, los tribunales apelativos no debemos intervenir con las determinaciones discrecionales del foro primario con el objetivo de sustituir su criterio por el nuestro. No obstante, esa deferencia cede, cuando el Tribunal de Primera Instancia actúa con prejuicio, parcialidad, incurrió en craso abuso de discreción o incurrió en error manifiesto. *Citibank et al v. ACBI et al,* 200 DPR 724 (2018).

Así pues, nuestro Tribunal Supremo ha establecido que un Tribunal incurre en un abuso de discreción:

> [1] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto;
>
> [2] cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente éste; o
>
> [3] cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descarta los irrelevantes, el juez los sopesa y calibra livianamente. *Pueblo v. Rivera Santiago*, 176 DPR 559 (2009) (citando a *García v. Padró*, 165 DPR 324 (2005); *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990)).

En *Pueblo v. Ortega Santiago, supra,* precisamente se discutía la suspensión de una sentencia. En esa ocasión, el Tribunal Supremo estableció que siempre estaba "presto a entender en todo caso en que, a [su] juicio, el juez de instancia haya incurrido en un abuso de discreción al denegar, o conceder, a un convicto de delito los beneficios de una sentencia suspendida. *Pueblo v. Sánchez González*, ante; *Pueblo v. Laboy*, 110 DPR 164 (1980)". *Íd.* en la pág. 212.

## C. La apreciación de la prueba

En materia de apreciación de prueba, los foros apelativos habremos de brindar deferencia a las determinaciones de hechos formuladas por el foro judicial primario. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420 (1999). La norma general es que, si la actuación del foro

*a quo* no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554 (1959).

Por ello, este Foro apelativo intermedio evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799 (2009). Sobre el particular, nuestro Tribunal Supremo ha expresado que:

> Una de las normas más conocidas en nuestro ordenamiento jurídico es que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín, supra*, pág. 753.

Sin embargo, la aludida norma de autolimitación judicial cede cuando "un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al apelante de manera principal señalar y demostrar la base para ello". *Pueblo v. Cabán Torres*, 117 DPR 645 (1986). Por tanto, como foro apelativo, no debemos intervenir con las determinaciones de hechos, ni con la adjudicación de credibilidad que hace un Tribunal de Primera Instancia y sustituir mediante tal acción su criterio, por el nuestro. *Rivera Menéndez v. Action Services*, 185 DPR 431 (2012); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345 (2009). Así pues, la apreciación que hace el foro primario merece nuestra deferencia, toda vez que es quien tiene la oportunidad de evaluar directamente el comportamiento de los testigos y sus reacciones. Recordemos que dicho foro, es el único que observa a las personas que declaran y aprecia su *demeanor*. *Ramírez Ferrer v. Conagra Foods PR, supra*;

*Trinidad v. Chade,* 153 DPR 280 (2001); *Ramos Acosta v. Caparra Dairy Inc.,* 113 DPR 357 (1982).

En fin, como norma general, no intervendremos con la apreciación de la prueba realizada por el Tribunal de Primera Instancia. *Rivera Menéndez v. Action Services, supra,* págs. 448-449; *Monllor Arzola v. Sociedad de Gananciales,* 138 DPR 600 (1995). No obstante, si, de un examen de la prueba, se desprende que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles, se justifica nuestra intervención. *C. Brewer PR, Inc. v. Rodríguez,* 100 DPR 826 (1972). Ello, sin obviar la norma que establece que un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez,* 116 DPR 172 (1985).

### D. Artículo 3.6 de la Ley 54

Una vez celebrado el juicio y, convicto que fuere, o que el acusado haga alegación de culpabilidad por cualesquiera de los delitos tipificados en esta Ley, el Tribunal podrá motu proprio o mediante solicitud del Ministerio Fiscal o de la defensa, suspender todo procedimiento y someter a la persona convicta a libertad a prueba, sujeto a que ésta participe en un programa de reeducación y readiestramiento para personas que incurren en conducta maltratante en la relación de pareja, según definida por el inciso (m) del Artículo 1.3 de esta Ley [Nota: Podría referirse al renumerado inciso (p)]. Únicamente cualificarán para este programa de desvío, los delitos sancionados en esta Ley. Antes de hacer cualquier determinación al respecto, el Tribunal deberá escuchar al Ministerio Fiscal. Esta alternativa de desvío solamente estará disponible cuando existan las circunstancias siguientes: (a) Se trate de una persona que no haya sido convicta, y recluida en prisión producto

de una sentencia final y firme o se encuentre disfrutando del beneficio de un programa de desvío bajo esta Ley o de sentencia suspendida, por la comisión de los delitos establecidos en esta Ley o delitos similares establecidos en las Leyes del Estado Libre Asociado de Puerto Rico o Estados Unidos contra la persona de su cónyuge, ex cónyuge, persona con quien cohabita o ha cohabitado, persona con quien sostiene o ha sostenido una relación consensual o persona con quien haya procreado un hijo o una hija, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación. (b) Se trate de una persona que no haya violado una orden de protección expedida por cualquier tribunal al amparo de esta ley o de cualquier disposición legal similar. (c) Se trate de una persona que no haya sido convicta por violación al Artículo 3.2A de esta Ley incluyendo su tentativa. (d) Se suscriba a un convenio entre el Ministerio Fiscal, el acusado y la agencia, organismo, institución pública o privada a que se referirá el acusado. (e) Como parte del convenio y de la participación en el programa de reeducación, la persona presente una declaración aceptando por la comisión del delito imputado y reconociendo su conducta. El Tribunal tomará en consideración la opinión de la víctima sobre si se le debe conceder o no este beneficio e impondrá los términos y condiciones que estime razonables y el período de duración de la libertad a prueba que tenga a bien requerir, previo acuerdo con la entidad que prestará los servicios, cuyo término nunca será menor de un (1) año ni mayor de tres (3). **Si la persona beneficiada con la libertad a prueba que establece este Artículo, incumpliere con las condiciones de la misma, el Tribunal, previo celebración de vista, podrá dejar sin efecto la libertad a prueba y procederá a dictar sentencia.** Si la persona beneficiada por la libertad a prueba que establece este Artículo no viola ninguna de las

condiciones de la misma, el Tribunal, previo celebración de vista, podrá dejar sin efecto la libertad a prueba y procederá a dictar sentencia. Si la persona beneficiada por la libertad a prueba que establece este Artículo no viola ninguna de las condiciones de la misma, el Tribunal, previa recomendación del personal competente a cargo del programa al que fuere referido el acusado, en el ejercicio de su discreción y previa celebración de vista, podrá sobreseer el caso en su contra.

### E. Ley de Sentencia Suspendida y Libertad a Prueba

*La Ley de Sentencia Suspendida y Libertad a Prueba,* Ley Núm. 259 de 3 de abril de 1946, según enmendada (34 LPRA sec. 1026 *et seq.*), fue creada con el propósito de establecer "la sentencia probatoria en el sistema judicial de Puerto Rico; para disponer en qué casos deberá suspenderse el efecto de la sentencia y ponerse al sentenciado a prueba, proveyendo para ello; para fijar los requisitos necesarios que deben concurrir para la imposición de tal sentencia probatoria, y para otros fines." Exposición de motivos, *Ley de Sentencia Suspendida, supra.* En ella, la Asamblea Legislativa estableció el privilegio que permite a un convicto cumplir su sentencia o parte de esta fuera de las instituciones penales. *Pueblo v. Vélez Torres,* 212 DPR 175 (2023) (citando a *Pueblo v. Hernández Villanueva,* 179 DPR 872 (2010); *Pueblo v. Zayas Rodríguez,* 147 DPR 530 (1999); *Pueblo v. Molina Virola,* 141 DPR 713 (1996)). Véase, también, *Ruiz Matos v. Dpto. de Corrección y Rehabilitación,* 213 DPR 291 (2023) (citando a *Pueblo v. Negrón Caldero,* 157 DPR 413 (2002)).

Al amparo del segundo artículo del estatuto, el Tribunal de Primera Instancia está facultado a ejercer la discreción de suspender los efectos de una sentencia sujeto a:

(1) Que dicha persona, con anterioridad a la fecha en que se intente suspender la sentencia dictada, no hubiere sido convicta, sentenciada y recluida en prisión por delito

grave alguno con anterioridad a la comisión del delito por el cual fuere procesada; y a la cual no se hubieren suspendido los efectos de una sentencia anterior por delito grave;

(2) que las circunstancias en que se cometió el delito no evidencien que existe en el autor del mismo un problema de conducta o de carácter para cuya solución favorable, en interés de la debida protección de la comunidad, se requiera la reclusión de dicha persona en alguna de las instituciones penales de Puerto Rico;

(3) que el juez sentenciador tenga ante sí un informe que le haya sido rendido por el Administrador de Corrección después de este último haber practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona sentenciada, y que, del contenido de ese informe, pueda dicho juez sentenciador concluir que ningún aspecto de la vida de esa persona evidencia que haya necesidad de que se le recluya en alguna de las instituciones penales de Puerto Rico para que se logre la reforma o rehabilitación que para ella persigue la ley como medida de protección adecuada a la comunidad.

(4) que, en los casos en que se tiene la obligación de pagar una pensión alimentaria, dicha persona haya cumplido con su obligación de hacer los pagos o esté acogido a un plan de pagos y esté cumpliendo con el mismo. Artículo 2, *Ley de Sentencia Suspendida, supra* (énfasis suplido); Véase, también, *Pueblo v. Vázquez Carrasquillo*, 174 DPR 40 (2008).

En cuanto al proceso de revocación de sentencias suspendidas o libertad a prueba, el Tribunal Supremo ha resuelto que, si bien el probando no es una persona enteramente libre, una vez el Estado le confiere el derecho limitado a estar en libertad, no puede cancelarlo en abstracción a los imperativos del debido proceso de ley. *Álamo Romero v. Administración de Corrección*, 175 DPR 314 (2009), citando a *Martínez Torres v. Amaro Pérez*, 116 DPR 717 (1985).

Ahora bien, por tratarse de la revocación de una libertad limitada en un procedimiento posterior a la convicción, el probando no tiene un derecho absoluto a todas las garantías procesales que se exigen en el procedimiento criminal ordinario. E. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Ed. Forum, 1991, Vol. I, a la pág. 519, citando a *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). Las garantías mínimas que el debido proceso

de ley exige para revocar una sentencia suspendida o probatoria son: (1) una vista preliminar para determinar si hay causa probable para creer que el probando ha violado las condiciones de su probatoria; y, (2) una vista final antes de la decisión definitiva sobre si la probatoria será revocada. *Martínez Torres v. Amaro Pérez, supra*, a la pág. 725; *Gagnon v. Scarpelli, supra.*

En torno al proceso específico para la revocación de la probatoria, el Artículo 4 de la *Ley de Sentencias Suspendidas, supra*, dispone lo siguiente:

> *3. [....]*
>
> *(a) El probando tiene derecho a recibir notificación escrita previa con antelación suficiente de las alegadas violaciones a la probatoria, que le permita prepararse adecuadamente y estar representado por abogado. Sujeto a la protección de aquellos entrevistados a quienes se les garantizó anonimato por razón de seguridad, confrontará la prueba testifical en su contra y presentará prueba a su favor.*
>
> *(b) El peso de la prueba corresponde al Ministerio Fiscal. La decisión del juez formulada a base de la preponderancia de la prueba será por escrito y reflejará las determinaciones de hechos básicos, la prueba en que se basó y las razones que justifican la revocación. El probando y el Ministerio Fiscal serán notificados de dicha decisión.*
>
> *(c) El tribunal podrá consolidar ambas vistas si la vista inicial se suspendiera a petición o por causas atribuibles al probando, a solicitud de su abogado, o cuando el Ministerio Fiscal no solicite o no logre obtener el arresto y encarcelación del probando. En esta última circunstancia la vista final de revocación definitiva se señalará mediante notificación con no menos de treinta (30) días de antelación.*
>
> *4. La vista sumaria inicial y la vista final deben dilucidarse ante distintos jueces, pero la vista final puede ser ventilada ante el mismo juez que sentenció originalmente al probando o que resolvió concederle la libertad a prueba.*

De lo anterior colegimos que el procedimiento estatutario para la revocación de la libertad a prueba incluye las garantías constitucionales mínimas, tales como notificación y vista. Además, para revocar tal desvío el tribunal debe tener motivo justificado y dar al convicto la oportunidad de ser oído. *Martínez Torres v. Amaro Pérez, supra*, a la pág. 726.

En la primera vista, por su carácter informal y sumario se auscultan probabilidades. El probando tiene derecho a conocer las alegadas violaciones a las condiciones de la probatoria, la oportunidad de comparecer y presentar evidencia a su favor; así como confrontar a los testigos adversos. *Martínez Torres v. Amaro Pérez*, supra. Posteriormente, en la vista final se le debe garantizar al peticionario:

> (a) una notificación escrita de las alegadas violaciones a la probatoria;
>
> (b) un examen de la prueba en su contra;
>
> (c) la oportunidad de ser oído personalmente y presentar testigos y evidencia documental a su favor;
>
> (d) el derecho a confrontar y contrainterrogar los testigos adversos, a menos que el juzgador examinador determine por razones de seguridad del informante justa causa para no permitir tal confrontación;
>
> (e) un juzgador neutral e independiente que puede ser uno solo o un cuerpo pluralista, aunque no el oficial socio-penal encargado de la suspensión del convicto; y,
>
> (f) determinaciones escritas de los hechos hallados probados, así como de la evidencia en que la decisión se basó, y las razones para revocar la probatoria. *Íd.*

### III.

La peticionaria recurre de una determinación del Tribunal de Primera Instancia, revocando la *Resolución* del 13 de mayo de 2024, en la cual se paralizaron los procedimientos en contra de la peticionaria y se le concedieron los beneficios del régimen de libertad a prueba sujeto al cumplimiento de una serie de condiciones. En consecuencia, sentenció a la peticionaria a tres (3) años de reclusión. Específicamente, la peticionaria alega que el Tribunal de Primera Instancia erró al revocar su sentencia suspendida a pesar de que el Ministerio Público no probó con preponderancia de la prueba el incumplimiento de la condición de "no acercarse a la parte perjudicada, en el hogar, trabajo, hogar de familiares; abstenerse de intervenir a través de cualquier red social, enviar correos electrónicos, carta, llamadas y mensajes de texto o por terceras

personas. No le ocasionará situaciones." Añadió, además, que ello le violó el debido proceso de la Ley de Sentencia Suspendida.

En el caso ante nuestra consideración, el Tribunal de Primera Instancia revocó la sentencia suspendida de la peticionaria por recomendación de la trabajadora social y luego de celebrada una vista final de revocación. En la vista, declaró la testigo de cargo la Sra. Gladiliz Santiago Berrios, técnico socio penal del Programa de la Comunidad de Aibonito. Por su parte, la defensa presentó como testigo al Sr. José Meléndez Cintrón. Cabe señalar que tanto la defensa como el Ministerio Público acordaron que la mejor manera de atender la controversia era modificando las condiciones de la probatoria de la peticionaria[1].

En su *Resolución,* el Tribunal de Primera Instancia concluyó lo siguiente:

> *1. El testigo de defensa corroboró el testimonio de la trabajadora social.*
>
> *2. La Sra. Ednaliz Rivera le mintió a la Social, al ocultarle que estaba junto con el perjudicado y decirle que no tenía comunicación con el perjudicado.*
>
> *La mendacidad es incompatible con el proceso de rehabilitación.*
>
> *3. El Ministerio Público probó que la probando violó la condición especial número 4 de la probatoria:*
>
> *No acercarse a la parte perjudicada, en el hogar, trabajo, hogar de familiares; abstenerse de intervenir a través de cualquier red social, enviar correos electrónicos, carta, llamadas y mensajes de texto o por terceras personas. No le ocasionará situaciones.*
>
> *El Ministerio Público probó que la probando hablaba por teléfono, por texto, estaba junto al perjudicado. La Social declaró que la probando le ocasiona golpes al perjudicado.*
>
> *El mismo testigo de defensa declaró que a partir del 18 de junio de 2024, ambos se vieron, hablaron y se texteaba, hasta trabajaban juntos.*
>
> *El pueblo demostró que la Sra. Ednaliz Rivera Espola ha tenido conducta antisocial o reñida con la moral y que violó las condiciones que se le impusieron en su*

---

[1] Nótese que la Trabajadora Social declaró que el remedio para atender la situación de que la peticionaria interesara reanudar su relación con el Sr. Meléndez, era precisamente esa, modificar las condiciones de la probatoria. Véase TPO, Pág. 12, líneas 16-21.

*sentencia. Al evaluar toda la prueba presentada en la Vista Final de Revocación el Ministerio Público probó por preponderancia de la prueba que la libertad de la Sra. Ednaliz Rivera es incompatible con el propósito de la rehabilitación.*

Como indicamos anteriormente, la norma general es que, si la actuación del foro *a quo* no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien le corresponde la dirección del proceso. Este Foro apelativo intermedio evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto.

De una revisión del expediente ante nuestra consideración, particularmente de la transcripción de la prueba oral de la Vista Final de Revocación, surge que en el presente caso el Tribunal de Primera Instancia incurrió en un error manifiesto. Ello es así, pues las conclusiones a las que llegó el Tribunal no encuentran apoyo en la prueba desfilada en la vista.

Entre los fundamentos para revocar la sentencia suspendida de la peticionaria, el Tribunal de Primera Instancia concluyó que la peticionaria le ocasionaba golpes al perjudicado. No obstante, al revisar la transcripción de la prueba oral notamos que esa conclusión no está sustentada en la prueba. De una lectura de la trascripción de la prueba oral, lo que surge es que eso es una conclusión a la que llega la testigo de cargo por el hecho de que el perjudicado, al ser confrontado sobre ese particular "solamente bajó la cabeza, no nos dijo nada, pero otorgó silencio".[2] Incluso, la testigo de cargo declaró que no pudo corroborar que esa información porque "quien único lo puede corroborar es él y otorgó silencio".[3]

De otra parte, en cuanto a la conclusión que llegó el Tribunal de Primera Instancia de que el testigo de defensa corroboró el

---

[2] Véase TPO, pág. 12 líneas 46-48.
[3] Véase TPO, pág. 20 líneas 44-52.

testimonio de la trabajadora social, tampoco encontramos apoyo en la prueba desfilada. Nótese que la condición que se alega violó la peticionaria, según redactada, lo que prohíbe son actos afirmativos de ésta para acercarse al Sr. Meléndez. No obstante, eso no es lo que surge de la prueba desfilada. Por el contrario, lo que surge es que la peticionaria tenía bloqueado al Sr. Meléndez y fue éste quien comenzó a buscarla[4]. Incluso, el Sr. Meléndez testificó bajo juramento que fue él quien trataba de contactar a la peticionaria en su lugar de trabajo, pero ella misma le decía que no se podía acercar[5]. En atención a ello, no podemos concluir, como lo hizo el Tribunal de Primera Instancia, que el testigo de defensa corroboró a la trabajadora social. De la prueba desfilada no surge que la peticionaria haya hecho gestión afirmativa de acercarse o intervenir con el Sr. Meléndez, sino que fue éste quien se acercó, buscó y contactó a la peticionaria.

En el presente caso, estamos ante un error manifiesto de apreciación de la prueba por parte del Tribunal de Primera Instancia, que requiere nuestra intervención. Ello es así, pues el Ministerio Público no probó por preponderancia de la prueba que la peticionaria haya violado la condición de la sentencia suspendida.

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte del presente dictamen, expedimos el auto de certiorari y revocamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[4] Véase TPO, pág. 31, líneas 37-52
[5] Véase TPO, pág. 32, líneas 34-44.